SIDNEY B. ROBY, Respondent, v. THE AMERICAN CENTRAL INSURANCE COMPANY OF ST. LOUIS, Appellant.

The mere dissolution of a firm does not destroy the joint interest of the copartners in the partnership property, or make them tenants in common; the property continues as partnership property until in some manner disposed of.

A policy of insurance on the stock, "fixtures, tools and machinery" belonging to the firm of W. C. & Co., which was composed of plaintiff and one C., provided that it should cease to be binding if there was any change to the title of the property insured without the consent of the company indorsed on the policy. The name of the firm was thereafter changed, a dissolution of the copartnership being in contemplation, but its business was continued for some time under plaintiff's management, without any change in the books and with the same machinery, and then there was a formal dissolution. Thereafter the property insured was partially destroyed by fire, and after this C. assigned all his interest in the firm assets to plaintiff. In an action upon the policy, held, that there was no change of title of the property insured within the meaning of the policy.

Where, after knowledge of the forfeiture of a policy, the insurer recognizes its continued validity, does acts based thereon, and requires the insured, by virtue thereof, to do some act or incur some trouble or expense, the

forfeiture is, as matter of law, waived; such a waiver need not be based upon any new agreement or upon estoppel.

The policy provided for a forfeiture if the risk was increased by any cause known to the insured, unless notice thereof had been given to defendant and its consent was indorsed on the policy, and that the working of carpenters, plumbers, or other mechanics in building, altering or repairing the property, building or premises should avoid the policy, unless permission for such work was given in the usual way. Plaintiff stated in his proofs of loss that the fire originated from machinery put in the building, as appeared, without defendant's consent, but its agent was informed of this on the day after the fire; it also appeared that such machinery decreased the risk of fire and was put in for safety. Defendant, after receiving the proofs of loss, notified plaintiff that they were unsatisfactory, because not properly signed and sworn to, and proper proofs were demanded. Plaintiff thereupon employed counsel and prepared and served a supplementary affidavit covering the points to which objection was made. *Held,* that defendant waived its right to insist upon a forfeiture.

*Robertson* v. *M. L. Ins. Co.* (88 N. Y. 541); *Weed* v. *L. & L. F. Ins. Co.* (116 N. Y. 106), distinguished.

(Argued May 1, 1890; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 21, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was upon an insurance policy issued by the defendant on the 26th of January 1882, whereby it insured the firm of William Corris & Co., in the sum of $2,000, for the period of one year from said date, against loss or damage by fire to their stock, " fixtures, tools and machinery as manufacturers of woodwork for carriages, contained in " a certain building in Rochester. Said firm was composed of William Corris and the plaintiff, and in September, 1882, the firm name was changed to The Rochester Wheel Co. A dissolution of the copartnership was then in contemplation, but the business was continued under the management of the plaintiff, without any change in the books and with the same machinery, until in January, when there was a formal dissolution. The

property insured was partially destroyed by fire on the 8th of January, 1883, and in March following William Corris assigned all his interest in the firm assets to the plaintiff. The defendant pleaded in its answer that there had been a change of title to the property insured without its consent; that the risk had been increased by repairs and alterations without its knowledge; that the proofs of loss were defective, and that the fire was caused "by said repairs, alterations or additions, or some one of them."

Further facts are stated in the opinion.

*A. J. Abbott* for appellant. The burden of proving the loss of the property insured is upon the plaintiff. (Wood on Ins. 734.) Until it is shown that all the machinery and stock for the destruction of or injury to which claim had been made was that of William Corris & Co., plaintiff is entitled to no recovery, for there is no evidence whatever as to the separate value of the old partnership stock and machinery, and that of the new individual stock and machinery put in by the plaintiff. (*Bachea* v. *Ritchie*, 51 N. Y. 677.) It stands admitted, and the case was submitted accordingly, that the fire and consequent loss resulted from the use of the exhaust fan which was put into the building by the plaintiff after the issuance of the policy, and without notice to or the consent of the defendant. The introduction and use of such exhaust fan running at a high velocity, without any notice to said company, and without its action and consent, effected an immediate and complete annulment of said policy. (*Ripley* v. *Ætna Ins. Co.*, 30 N. Y. 163.) The policy having thus been *ipso facto* annulled, in order to its renewal, the plaintiff must clearly establish the fact, that the defendant company, with full knowledge of the facts causing such legal annulment, purposely abandoned any defense it was entitled to in consequence of such forfeiture. (*Denvers* v. *M. & T. Ins. Co.*, 83 N. Y. 173; *Wheaton* v. *N. B. Ins. Co.*, 18 Pac. 758; *Finley* v. *L. Ins. Co.*, 30 Penn. St. 311; *Allen* v. *V. M. F. Ins. Co.*, 12 Vt. 366; *Forbes* v. *A. M. Ins. Co.*, 9 Cush. 470;

*Robertson* v. *M. L. Ins. Co.,* 88 N. Y. 541; *Q. Ins. Co.* v. *Young,* 5 South. Rep. 116; *Jewett* v. *H. Ins. Co.,* 29 Ia. 562; *S. Ins. Co.* v. *Fay,* 22 Mich. 467; *Diehl* v. *A. C. M. Ins. Co.,* 58 Penn. St. 443; *Beatty* v. *L. Ins. Co.,* 66 id. 9.) A "policy" of insurance imports a written, or printed instrument. (Wood on Ins. 5; Webster's Dict. Policy.) "Stipulations contained in, or expressly made a part of the policy are warranties   *   *   *." (May on Ins. § 156; 30 N. Y. 136; 98 Mass. 381; Wood on Ins. 313.) "The insured is charged with the burden of proving all matters that stand as conditions precedent to his recovery, and thus imposes upon him the burden of proving a literal compliance, on his part, with all the express warranties in the policy   *   *   *." (Wood on Ins. §§ 734, 866; *Ripley* v. *Æ. Ins. Co.,* 30 N. Y. 163; 67 id. 595; *Dwight* v. *G. Ins. Co.,* 103 id. 341, 347.) If the risk were increased, it is "entirely immaterial to inquire, whether the loss was occasioned by the increase of risk, unless the stipulation be, that the insurers will not be liable for any loss occasioned by an increase of risk." (May on Ins. §§ 220, 221; *Mäck* v. *R. G. Ins. Co.,* 11 N. Y. S. R. 1.) "It is competent for partners, by agreement among themselves, to convert what was partnership property into the separate property of an individual partner, or *vice versa.* And the nature of the property may be thus altered, by an agreement to that effect, for neither deed or writing is absolutely necessary." (Collyer on Part. 184, § 545.) The moment the partnership ceases, the partners become tenants in common, from that time. (*Murray* v. *Mumford,* 6 Cow. 441; *Gestner* v. *Canajoharie,* 2 Barb. 625; Collyer on Part. § 545; Wood on Ins. § 335.) When a policy is issued to two joint tenants, and stipulates that any sale, or change of title, etc., or of any undivided interest therein, shall avoid the policy, there would seem to be no question that a sale by one tenant in common to another, or of one partner to another, would come within the prohibition. (Wood on Ins. 560.) But where the policy merely provides that any sale, transfer or change of title, etc., shall avoid the policy, it is

held that a sale by one joint owner to another does not come within the prohibition. (32 N. Y. 405; *Hine* v. *Woodworth*, 93 id. 72; *Savage* v. *H. Ins. Co.*, 52 id. 504.)

*William N. Cogswell* for respondent. The motion for a nonsuit at the close of plaintiff's case was properly denied. (*Murray* v *N. Y. L. Ins. Co.*, 85 N. Y. 236.) The motion to dismiss the complaint made at the close of the testimony was properly denied. (*Castle* v. *Duryea*, 32 Barb. 480; *Trustee, etc.* v. *Cagger*, 6 id. 576; *Murray* v. *Mumford*, 6 Cow. 441; *Hoffman* v. *A. Ins. Co.*, 32 N. Y. 405; *Wood* v. *E. R. Co.*, 72 id. 196; *Wolfe* v. *S. Ins. Co.*, 39 id. 45; *Hooper* v. *H. F. Ins. Co.*, 17 id. 425.) After the fire Mr. Brennan, the general agent of the company, became possessed of knowledge of the fact that the changes, alterations, etc., now complained of had been made in the building in which the insured property was situated. His knowledge was the knowledge of the company, or at least it must be presumed that he communicated the information thus obtained to his principal. (Story on Agency, § 140; *Titus* v. *G. F. Ins Co.*, 81 N. Y. 410, 418, 419; *Clark* v. *Hyatt*, 29 N. Y. S. R. 851.) Expert testimony was inadmissible. (*J. Ins. Co.* v. *Cotheal*, 7 Wend. 72; *Ferguson* v. *Hubbell*, 77 N. Y. 507.)

Vann, J. The policy in question provided that if the risk should be increased by any cause known to the insured, unless notice thereof should be given to the defendant and its consent indorsed upon the policy, or if there should be any change of title to the property insured without such consent, the policy should thereupon cease to be binding upon the company. It further provided that the working of carpenters, plumbers or other mechanics in building, altering or repairing the property, building or premises named in the policy, should avoid the same, unless permission for such work were given in the usual way.

Whether there was an increase of risk within the meaning of the policy was a question of fact that was duly submitted

to the jury. They are presumed to have found against the defendant upon that issue, and as their conclusion is supported by sufficient evidence, it cannot be reviewed here. (*Hynes* v. *McDermott,* 91 N. Y. 451, 464.)

We think that there was no change of title to the property insured, because the mere dissolution of a firm does not destroy the joint interest of the copartners in the partnership property, nor make them tenants in common. (*Murray* v. *Mumford,* 6 Cow, 441; *Tarbell* v. *West,* 86 N. Y. 280, 290; *King* v. *Leighton,* 100 id. 386, 392; *Dresser* v. *United Fireman's Ins. Co.,* 45 Hun, 298; Story on Part. § 325; Lindley on Part. [5th ed.] 218.)

The copartnership continued, in a limited sense, with reference to past transactions and existing assets. While the power previously possessed by each partner to bind the other was determined, that which was partnership property before the dissolution, continued to be such afterward, until one of the copartners sold his interest to the other.

The motion to nonsuit was based upon many grounds, some of which are too general to require attention, and none of which need further notice, except the following:

" 6. That the proofs of loss furnished the defendant show upon their face that the fire originated through friction in the exhaust fan, which the proofs on the trial show was put into the building where the property insured was located after the policy was issued, and without the consent of the defendant, as provided by the policy."

The defendant excepted to the denial of said motion, and also to the instruction of the court to the jury "that if the company, after it had notice of the repairs or alterations upon which it now relies to defeat the policy, requires, by virtue of the policy, any action on the part of the plaintiff by which he was subjected to inconvenience or expense, it has waived this forfeiture."

The plaintiff stated in the proofs of loss " that the fire originated through friction in the exhaust fan, as deponent verily believes." The exhaust fan consisted of a circular iron case,

about four feet in diameter, with a wheel within, described as a paddle wheel, with broad blades. This wheel, by rapid revolution, created a powerful current of air that carried away the shavings. The evidence showed that such machines are largely used for that object; that they are introduced for "the very purpose of their safety," and that while they are liable to friction, as all machinery is, "as a whole they decrease the risk."

Defendant's agent, whose authority is not questioned, testified that he visited the building in which the risk was located at the time that he issued the policy; that he knew what the property insured generally consisted of and what the business of the firm was; that the next day after the fire he examined the premises and found that this exhaust fan had been put in and, through the conversation of other agents, learned about the alterations, improvements and changes that had been made. The proofs of loss were received January 29, 1883, and on the third of February, the defendant, through its general adjuster, notified the insured, in writing, that such proofs were unsatisfactory, because they were not properly signed and sworn to; that they were signed "William Corris & Co., composed of Sidney B. Roby," and that "William Corris & Co., collectively, are incompetent to make an oath testifying to the correctness of the statements in the pretended proofs; some one or more of the individual members of such firm must sign his or their individual names as of and for the said firm, and testify and each for himself sign and testify under oath to the correctness of such statement;" that the signature of the notary was not authenticated by a seal, and that the *jurat* was defective in form. The notice further stated as follows: "Proofs of loss in due form covering the objections and requirements hereinbefore mentioned and referred to, and *conforming to the requirements of the printed condition of said policy* * * * should be made under said policy and * * * are required of you." Full information under oath was also required as to who composed the firm of William Corris & Co., and as to each and every transfer or change of

title to the property mentioned in the policy. No information was required upon any other subject, and no intimation was given that the company intended to rely upon the forfeiture clauses, or that it claimed that the policy was void for any reason.

Upon the receipt of this notice, the insured employed counsel to advise what it was necessary to do, and on March 3, 1883, prepared and served a supplementary affidavit, substantially covering the points as to which further information was required by the company. The policy contained explicit provisions in regard to the proofs of loss to be furnished by the insured, and required that they should be "signed by his own hand" and accompanied by "his oath or affirmation." They were to contain information upon many points, and, among others, as to who was the owner of all the property insured.

Thus it appears that after the fire and after the defendant knew of the facts involving the forfeiture now insisted upon, it recognized the validity of the policy and subjected the insured to trouble and expense by requiring them to furnish information pursuant to its provisions. Hence this case is brought within the principle laid down in *Titus* v. *G. F. Ins. Co.* (81 N. Y. 410). The court in deciding that case said : " It may be asserted broadly that if in any negotiations or transactions with the insured, after knowledge of the forfeiture, it (the company) recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act, or incur some trouble or expense, the forfeiture is as matter of law waived, and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or estoppel." Among many cases cited in support of this proposition are *Goodwin* v. *M. M. L. Ins. Co.* (73 N. Y. 480, 493), *Prentice* v. *K. L. Ins. Co.* (77 id. 483), and *Brink* v. *H. F. Ins. Co.* (80 id. 108). The principle is recognized in *Robertson* v. *M. L. Ins. Co.* (88 id. 541, 545), but was not applied, as in that case, as well as in *Weed* v. *L. & L. F. Ins. Co.* (116 id. 106, 118), the company did not know of the facts relied

upon to work a forfeiture when its action, that was claimed to constitute a waiver, was taken.

The policy in question was void or valid as a whole. If any part was valid, it was all valid. The defendant could not enforce any part without practically admitting that it was operative in all its parts. By demanding further proofs of loss, in fact and in form it demanded that which it had contracted for and thus attempted to enforce the contract in part. The insured complied with the demand and was thereby put to expense and inconvenience, and thus the defendant succeeded in enforcing the contract in part. It then knew, or is presumed from the evidence and the verdict of the jury to have known, that the exhaust fan had been put in by the insured after the date of the policy. (*Hyatt* v. *Clark*, 118 N. Y. 563, 569.) Knowing that it could insist upon a forfeiture on this ground and without attempting to reserve any right, it called on the insured to perform their part of the contract and thus put itself in the position of deliberately asserting its validity, and of insisting that it should be carried into effect. When, in turn, it was called upon to perform its own part thereof, it could not recede from that position. It could not enforce the contract as valid in so far as it was favorable, and resist it as void in so far as it was unfavorable. After requiring performance from the insured with knowledge of the facts, it could not refuse performance on the ground that those facts had worked a forfeiture. We think, therefore, that the learned trial judge correctly announced and applied the law when he instructed the jury that if they found the facts in accordance with the theory of the plaintiff, the defendant had waived its right to insist upon a forfeiture.

As we find no exception that requires a new trial, we think that the judgment should be affirmed, with costs.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.

Judgment affirmed.